IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ALLISON E. MOSHER, )
 )
    Plaintiff, )
 )
v. ) Case No.: 2:18-cv-935-WC
 ) [WO]
ANDREW SAUL,[1] )
Commissioner, Social Security )
Administration )
 )
    Defendant. )

## **MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Allison E. Mosher ("Mosher" or "Plaintiff") filed a Title II for Social Security Disability Child's Insurance ("SSDI") on February 9, 2015. R. 14. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on November 8, 2016. R. 27, 31–42. Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review on July 24, 2018. R. 11–17. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* §205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 16); Gov't's Consent to Jurisdiction (Doc. 15). After careful scrutiny of the record and the parties' briefs, and for the reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## II.   STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater,* 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389 (1971)); *Foote,* 67 F.3d at 1560 (citing *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart,* 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan,* 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote,* 67 F.3d at 1560 (citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence*.*" *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth,* 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id*.; *Brown v. Sullivan,* 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor,* 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act provides child disability insurance benefits for a disabled adult child relying on the earnings record of an individual who is "entitled to old-age or disability benefits, or [. . .] dies a fully or currently insured individual." 42 U.S.C. § 402(d);

3

20 C.F.R. § 404.350(a). There are several criteria that must be met to qualify for child insurance benefits as a disabled adult. 20 C.F.R. § 404.350(a)(1)–(5). Relevant to this case, if the claimant is over 18, the claimant must be unmarried and "have a disability that began before [she] became 22 years old."[3] *Id.* at § 404.350(a)(4), (5); 42 U.S.C. § 402(d)(1)(B). "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.A. § 423(b)(2)(A) (West). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

The Commissioner of Social Security employs the same five-step, sequential evaluation process in determining the disability of a child who was under a disability after age 18 but prior to age 22 that is used to determine whether adult claimants are entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1) Has the claimant engaged in substantial gainful activity?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the person unable to perform his or her former occupation?

---

[3] Mosher is unmarried, and the relevant earnings record relied upon in this case is that of Mosher's father. R. 332–33.

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart,* 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids") or hear testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available

to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents one issue for the Court to consider in its review of the Commissioner's decision: Was the Commissioner's determination that the Plaintiff's employment with UAB was "substantial gainful activity" contrary to Regulations § 404.1572 and § 404.1573(c). Doc. 12 at 1.

## V. DISCUSSION

Allison Mosher turned 22 years old on November 2, 1999, and was 40 years old at the time of the ALJ's decision. R. 14–15. She was employed by the University of Alabama at Birmingham ("UAB") from 2006 through 2009. During these years of employment, Mosher earning $11,259.14 in 2006, $27,806.76 in 2007, $29,308.43 in 2008, and $21,928.39 in 2009. R. 15. The ALJ noted that

> the records of the Social Security Administration ("SSA") do show that claimant had protectively filed an application for supplemental security income (SSI) on February 28, 2002. At the time of filing, she was age 24. On August 8, 2002, SSA found her disabled. Her first monthly payment was made in March 2002. Her SSI payments were discontinued during her work activity in years 2006–2009.

R. 15 n.1 (citations omitted).

The SSA denied Mosher's application "at the initial and reconsideration levels because she had engaged in substantial gainful activity." R. 14. Following an administrative hearing, the ALJ found at Step One that the "SSA properly denied claimant's application for child disability benefits based upon substantial gainful activity." R. 15. The

ALJ explained that "[u]nder agency policy, in an initial application for child disability benefits, if an applicant has never been entitled to child disability benefits and the onset date cannot be established prior to age 22 because substantial gainful work activity was performed after age 22, the claim will be denied for substantial gainful activity purposes." R. 15 (citing POMS § DI 10115.022).

Substantial gainful activity ("SGA") is simply defined as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity is work activity that [is done] for pay or profit" and includes any "kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). The Commissioner uses "several guides" in determining whether the work done by a claimant qualifies as SGA. 20 C.F.R. § 404.1572. A claimant's earnings are a primary measure in determining if they are engaged in SGA. 20 C.F.R. § 404.1572(a)(1). To start, the Commissioner considers the amount earned by a claimant and if it exceeds the guidelines. 20 C.F.R. § 404.1572(a)(1). Next, the Commissioner determines if the claimant's earnings "exceed the reasonable value of the work [performed]," and if it is determined that the claimant's earnings are subsidized, the amount of the subsidy is not considered in determining if the work activity meets the SGA threshold. 20 C.F.R. § 404.1572(a)(2). Finally, the Commissioner determines if the claimant is "working in a sheltered or special environment." 20 C.F.R. § 404.1572(a)(3).

The ALJ found that Mosher is "presumed to have engaged in [SGA] if, in 2006, her averaged monthly earnings exceeded $860.00; in 2007, $900.00; in 2008, $940.00; and in 2009, $980.00. R. 15 (citing Program Operations Manual System ("POMS") DI 10501.015). The ALJ held that "[b]ased upon her earnings, claimant's work activity in these years fall above SGA." The ALJ noted that Mosher attempted to rebut the presumption by alleging that her earnings were subsidized by UAB and that her position qualified as a sheltered workshop. R. 15.

### A. Subsidized Position

Although Mosher does not directly address the Commissioner's decision that she failed to meet her burden of proof that her position was subsidized, she does present the question, generally, of whether her position with UAB should be considered substantial gainful activity. Accordingly, the Court will address the subsidy issue out of an abundance of caution. The ALJ stated that an "employer who wants to subsidize the earnings of a worker with a serious medical impairment may designate a specific amount as such, after figuring the reasonable value of the employee's services." R. 15. However, the ALJ found that Mosher had failed to provide any information from UAB, or otherwise, that her earnings were subsidized or the amount of said subsidy. R.15 (citing POMS DI 10505.010). The ALJ sent the work activity questionnaire, Form SSA-3033-BK, to UAB as well as to Michelle Nault ("Ms. Nault"), Mosher's former supervisor, on June 17, 2017, and again on July 25, 2017. The ALJ never received a completed form from either UAB or Ms. Nault. Thus, after considering Mosher's testimony and the "other evidence that might suggest a

subsidy" the ALJ was unable to conclude that Mosher's position was subsidized by UAB and held that Mosher failed to meet her burden. R. 15.

On August 6, 2018, counsel for the Plaintiff submitted two copies of the work activity questionnaire to the Appeals Council that were completed by Ms. Nault and Gregory Carlson, the Business Officer at UAB. R. 305–09. The Appeals Council denied Mosher's request for review on September 27, 2018. R. 4. The Appeals Council specifically discussed the work activity questionnaires and found that they do "not show a reasonable probability that it would change the outcome of the decision." R. 5. The Appeals Council stated that "Mr. Carlson is a business officer for the University of Alabama at Birmingham. [The questionnaire] has little probative value since he did not supervise the claimant while she worked there." R. 5. Additionally, the Appeals Council found that the "questionnaire completed by Ms. Nault is inconsistent with her evaluation of the claimant's work from August 2007 through August 2008 in which she stated that the claimant frequently exceeded the standard level of performance and to which she attached a list of the claimant's accomplishments since she was hired in August 2006." R. 5.

"[N]ew evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1067 (11th Cir. 1994). "When a claimant properly presents new evidence to the AC and it denies review, we essentially consider the claimant's evidence anew to determine whether 'that new evidence renders the denial of benefits erroneous.'" *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (quoting *Ingram v.*

*Comm'r*, 496 F.3d 1253, 1262 (11th Cir. 2007). Here, Plaintiff properly presented new evidence to the Appeals Council, and the Appeals Council reviewed the newly submitted evidence. The Appeals Council declined remand because it found the newly submitted evidence was not probative and was inconsistent with the record. It should also be noted that in Mr. Carlson's questionnaire, he stated that UAB did not pay Mosher "more per hour than you would another employee in a similar position." R. 307. Thus, even if his opinion was probative, he stated that Mosher's position was not subsidized. This evidence directly conflicts with Ms. Nault's questionnaire, in which she states that the position was subsidized by approximately $5 per hour. The Appeals Council did not err in refusing to remand the case to the ALJ based on the newly submitted evidence because the Appeals Council's finding that the evidence was not probative and inconsistent with the record, as well as the conflicting nature of the questionnaires, did not render the denial of benefits erroneous.

### B. Sheltered Workshop

Mosher argues that the ALJ's opinion is due to be reversed because the evidence in this case "clearly demonstrates that the employment at UAB was not competitive employment, and was part of a sheltered workshop." Doc. 12 at 3. Mosher asserts that her position required the diagnosis of a severe mental illness, was funded by a grant that required the diagnosis of a severe mental illness, was part of her own mental illness therapy, and was allotted certain accommodations such as the ability to take a nap in her office, absences from work up two days per week, and excusal from attending business meetings. Doc. 12 at 3–4.

The ALJ addressed each piece of evidence in turn. First, the ALJ found that UAB's records do not support Mosher's testimony that a diagnosis of a severe mental illness was required to qualify for the position. R. 15. The ALJ reviewed Mosher's UAB application, dated May 3, 2006, and UAB's "position request form," which both indicate that she was applying for a "Case Manager" position. R. 15–16. The documents also indicate that the position was being "refilled due to vacancy," and that the "qualifications for this job required the applicant to have a bachelor's degree in mental health or human services with experience with criminal justice or drug treatment preferred." R. 16. Additionally, the ALJ found nothing in UAB's position request form "requiring the applicant to have a diagnosis of severe mental illness." R. 16.

Next, regarding the special accommodations, the ALJ found that "the record does not tend to support special work accommodations throughout her employment." R. 16. The ALJ noted that the record indicates Mosher's claimed accommodation of resting/napping was done so during her lunch or other breaks or by use of her accumulated leave time, and thus, it was not a special accommodation, but rather it was "off time from job duties legally available to all employees." R. 16. The ALJ also found that Mosher's UAB leave accrual summary does not support the assertion that she missed two days of work per week. R. 16. The ALJ pointed out that UAB's 2009 leave accrual summary indicates that:

> as of September 17, 2009, [the leave accrual summary] shows that claimant had used no leave time in January 2009, 3 days of sick leave in February 2009, 1 day of sick leave in March 2009, 1 day of vacation leave and 1 day of sick leave in April 2009, no leave in May 2009, 7.39 days of vacation leave and 1.61 days of sick leave in June 2009, 1 day of vacation leave and .50 day of sick leave in July 2009, and .20 day of vacation leave, 3 days of personal holiday leave and 1.18 days of sick leave in August 2009.

R. 16, 114.  Further, "[a]s to being excused from staff meetings, UAB records do show that this work restriction was approved on June 25, 2009, but it was put into place near the end of claimant's employment.  It appears that on August 3, 2009, this restriction ended." R. 16.

The ALJ also reviewed the letter and the questionnaire submitted by Ms. Nault, and found it "unpersuasive due to inconsistencies in the record." R. 16, 67–68, 266–68.  For example, the ALJ noted that Mosher's performance appraisal forms completed by Ms. Nault "show that claimant met standard level of performance or frequently exceeded standard level of performance." R. 16.  In Mosher's August of 2008 performance review, Ms. Nault noted that Mosher "had done a 'great job' representing UAB as a certified peer specialist," and attached two pages of Mosher's accomplishments. R. 16, 195–99.  The ALJ found that these performance reviews conflict with Ms. Nault's letter stating that Mosher would exhibit "significant performance issues" and that "work stressors" exacerbated her mental illness symptoms. R. 67.

Finally, the ALJ noted that Ms. Nault's questionnaire indicates that Mosher's levels of stress increased toward the end of her employment due to issues with a co-worker that ultimately resulted in Mosher filing sexual harassment and hostile work environment charges against UAB. R. 17, 268.  "Prior to 2009, UAB records do not reflect any significant problems in claimant's job performance or in her relationship with coworkers or supervisors.  Nor do they reflect any need for special work accommodations.  Her employment ended on August 31, 2009, due to lack of job funding." R. 17.

As previously stated, the burden of proof rests on a claimant through Step 4. *See Phillips,* 357 F.3d at 1237–39 (11th Cir. 2004). "[T]he burden is on the claimant to show that she is disabled and, therefore, she is responsible for producing evidence to support her application." *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (citing 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c)). Here, because there is a presumption that Mosher has engaged in substantial gainful activity since her average monthly earnings are greater than the amounts set forth in the Commissioner's table (*see* POMS DI 10501.015), the burden shifts back to Mosher to overcome that presumption by proving that her position was either subsidized or qualified as a sheltered workshop. R. 12.

Mosher failed to meet her burden of producing evidence to support her claim that this position was a sheltered workshop. Mosher failed to provide evidence to support her claim that UAB required a diagnosis of a severe mental illness to apply for her position, that the grant which funded the position required a diagnosis of a severe mental illness, or that she had special accommodations. The only evidence submitted that the position or grant required a diagnosis of a severe mental illness was the letter and questionnaire completed by Ms. Nault. The ALJ found this evidence to conflict with the record because UAB's "position request form" does not list a diagnosis as a prerequisite for applying for the position, the position was for "Case Manager," it was being refilled due to a vacancy, and Mosher's employment application indicates a work history that is not consistent with her claim that she never held a full-time job prior to UAB. R. 15–16. Additionally, the ALJ found that the claim of special accommodations were inconsistent with the record because Ms. Nault's letter and questionnaire directly conflicted with Mosher's

13

performance reviews, some were not put in place until the last few months of her employment, and some of the accommodations listed were available to any employee. R. 16.

The Undersigned has thoroughly reviewed the record and holds that the Commissioner's decision is supported by substantial evidence. Mosher did not meet her burden at Step One of producing sufficient evidence to support her application and showing that her position with UAB was either subsidized or a sheltered workshop.

## VI. CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this the 4th day of March, 2020.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE